UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAIME LUEVANO,

                                        Plaintiff,

                                                                5:21-CV-265
v.                                                              (GLS/TWD)

IVANKA TRUMP, *et al*.,

                                        Defendants.
_____

APPEARANCES:

JAIME LUEVANO
Plaintiff, *pro se*
Prisoner No. 1655791
Hughes Correctional Facility
Rt. 2 Box 4400
Gatesville, Texas 76597

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

     Jamie Luevano ("Plaintiff") filed an action against Ivanka Trump and several other

individuals (collectively, "Defendants").  (Dkt. No. 1.)  Currently before the Court is Plaintiff's

application to proceed *in forma pauperis* ("IFP Application").  (Dkt. No. 5.)  A court may grant

*in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.

28 U.S.C. § 1915(a)(1).  After reviewing Plaintiff's IFP Application (Dkt. No. 5), the Court finds

Plaintiff meets this standard.

     However, a review of public records reveals that Plaintiff "has a long history of filing

frivolous and abusive litigation."  *Yieson v. Akwitti*, Civ. A. No. 20-823, 2020 WL 6577504, at

*1 (W.D. Tex. Oct. 30, 2020) (citing examples of Plaintiff's prior frivolous filings in a case he

attempted to file in the name of another inmate to raise his own claims).  Accordingly, federal judges, both inside and outside of Texas, have precluded him from proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915(g), and have imposed sanctions and injunctions upon him when he continued to exhibit abusive filing behavior.  *Luevano v. U.S. Texas Judges*, No. 20-CV-5840, 2020 WL 7181058, at *1 (E.D. Pa. Dec. 7, 2020); *Luevano v. Skyview Unit Psych Doctors*, N.D. Tex. Civ. A. No. 19-2186 (Sept. 17, 2019 Notice re: Application of Prior Sanction Order); *Luevano v. U.S. Circuit Judges of D.C.*, D.D.C. Civ. A. No. 18-1297 (June 14, 2018 Memorandum and Order); *Luevano v. Clinton*, Civ. A. No. 15-142, 2015 WL 3408123, at *1–*2 (W.D. Tex. May 27, 2015).  In addition, this Court has previously found Plaintiff's complaint to be frivolous and dismissed it without prejudice on those grounds.  *Luevano v. Clinton*, No. 5:10-CV-754 GTS/ATB, 2010 WL 3338704, at *1 (N.D.N.Y. July 1, 2010).

Furthermore, it is evident that Plaintiff has amassed more than three strikes and is therefore ineligible to file an action *in forma pauperis* unless he is in imminent danger of serious physical injury.  *See* 28 U.S.C. § 1915(g).  Plaintiff has a multitude of strikes, and several of his cases have been conditionally dismissed based on the three-strikes rule, and subsequently subject to final dismissal after plaintiff failed to pay the filing fee.  *Luevano v. Clinton*, 2010 WL 3338704 at *4 (collecting cases).  Because plaintiff has many strikes, his motion to proceed IFP would have to be denied, and plaintiff would be instructed to pay the filing fee or risk dismissal of the action.  However, a review of the merits of Plaintiff's complaint shows that the court need not give Plaintiff this option because the action is clearly frivolous and would be dismissed outright even if he paid the filing fee.

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

(1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources.  *Id.* at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974).  Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

Here, Plaintiff's complaint is almost incomprehensible, and he utterly fails to provide sufficient information for the Court to review or for Defendants to have notice of the claims against them.  The haphazard collection of allegations in the complaint does not provide any indication of the causes of action Plaintiff intends to assert or whether this Court has jurisdiction over the action.  Rather, his complaint is fanciful mélange of allegations that are unhinged with reality.  As such, this Court recommends his complaint be dismissed with prejudice and without leave to amend.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 5) is **GRANTED** solely for purposes of initial review; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**, and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[1]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated:  April 9, 2021
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[1]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2010 WL 3338704
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jaime LUEVANO, Plaintiff,

v.

Hillary Rodham CLINTON, et al., Defendants.

No. 5:10–CV–754.
|
July 1, 2010.

**Attorneys and Law Firms**

Jaime Luevano, El Paso County Detention Facility Annex, El Paso, TX, pro se.

**ORDER and REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

**\*1** The Clerk has sent to the Court for review a complaint, together with an application to proceed *in forma pauperis* filed by plaintiff, Jaime Luevano ("Plaintiff" or "Luevano"). (Dkt.Nos.1, 2).

**I. *In Forma Pauperis (IFP) Application***

A review of Plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). The form indicates that Plaintiff does not have *any* income at all. *Id.* Thus, for purposes of this Order, the Court finds that Plaintiff meets the economic criteria for proceeding without the payment of fees.

In addition to determining whether Plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir.1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). The Court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II. *Complaint***

In this almost incomprehensible complaint, plaintiff names Secretary of State Hillary Rodham Clinton; S. Reyes, a U.S. Congressman, and "E.S.," purportedly a United States Senator. (Compl.) (Dkt. No. 1). Although plaintiff has filed this action on a form for complaints under 42 U.S.C. § 1983, and states that he demands a jury trial, the next line of the document is handwritten and states that this is a "Writ of Mandamus [sic] Compel to Reopen—n—Review." *Id.* In his statement of facts, plaintiff claims that during Secretary (then-Senator) Clinton's campaign, she apparently went to El Paso, Texas. (Compl. at 4). Plaintiff claims that, during that time, a commercial for Secretary Clinton aired on television, and that this commercial somehow "inflame[ed] a set-up jury panel." *Id.*

**\*2** On the last page of the complaint, under plaintiff's signature, he includes some additional facts, stating that an

innocent man could be killed, and that his life is in danger. (Compl. at 6). He mentions that police falsely testified that certain reports were made at nine or ten o'clock in the morning, when they were really made at three o'clock in the morning, [1] but the "Insane Judge" denied all the evidence, "even the videotapes." *Id.* Plaintiff claims that the "Jurors" conspired with the District Clerk and attorneys. *Id.* Plaintiff lists three "Causes of Action." (Compl. at 5). The first merely states "F.B.I. etc. al. [sic]," the second states "U.S. Senators, etc. al. [sic]," and the third cause of action states "U.S. Congress, Rep. etc. al. [sic] ." *Id.*

His "Prayer for Relief" states that he is making an "Innocence claim in general." (Compl. at 6). Plaintiff asks this court to appoint the "Innocence Project of New York;" Prof. Barry C. Scheck, and Peter Neufeld, Esq. He asks for "Emergency Hearings—Discovery—Summons—U.S. Marshal Service." *Id.* He cites the "Innocence Protection Act." *Id.* Reading the entire document leads this court to find that plaintiff is somehow attempting to challenge a conviction, rather than bring a civil rights complaint. However, regardless of the basis of this document, and the claims therein, it must be dismissed for many reasons.

### III. *Venue*

Venue in federal-question cases is generally determined by 28 U.S .C. § 1391(b) which provides that

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

When the defendants are officers or employees of the United States, acting in their official capacities, section 1391(e) provides that venue is proper

> in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

In this case, plaintiff is in prison in Texas, and plaintiff has listed all the defendants as residents of Washington, D.C. Plaintiff states that the Congressman and Senator are from Texas. Regardless of the statute used for venue in this action, and regardless of the residence of any individual listed on the complaint, neither plaintiff, nor any of the defendants reside in the Northern District of New York, and the Northern District of New York has no other connection to plaintiff's case. Thus, venue in the Northern District of New York is clearly improper.

**\*3** Under 28 U.S.C. § 1406, a district court faced with a case brought "laying venue in the wrong division or district, shall dismiss" or, in the interests of justice, shall transfer the case to the district in which it could have been brought. 28 U.S.C. § 1406(a). The Second Circuit has cautioned that a court should not dismiss for improper venue on its own motion "except in *extraordinary circumstances.*" *Stich v. Rehnquist,* 982 F.2d 88, 89 (2d Cir.1992) (emphasis added). This court finds, however, that this plaintiff's case presents precisely those extraordinary circumstances that were present in *Stich.*

In *Stich,* plaintiff brought his action in the Southern District of New York, including among other defendants, the Justices of the Supreme Court; a former United States Attorney General; and bankruptcy judges in the Ninth Circuit, where he had been classified as a vexatious litigant and had been barred from bringing suits without leave of court. *Id.* at 88. The Second Circuit in *Stich* quoted the District Court's finding that "neither the activities nor the parties alleged in this complaint have any relation to this district" because the plaintiff was domiciled in Nevada and resided in California, while all the defendants were residents of the District of Columbia. *Id.* at 89. Based on these facts, the Second Circuit determined that the "case presented appropriate circumstances for the court's exercise of its power to dismiss" *sua sponte,* based on improper venue." *Id.* As discussed below, plaintiff's complaint in this action is completely frivolous and may have been filed in this district to avoid dismissal in Texas.

Therefore, the court should dismiss, rather than transfer the action.

## IV. *Three Strikes*

Congress passed the Prison Litigation Reform Act ("PLRA") "with the principal purpose of deterring frivolous prisoner lawsuits and appeals." *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997) (citing *Leonard v. Lacy,* 88 F.3d 181, 185 (2d Cir.1996)). Section 1915(g) provides that

> [i]n *no* event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding [*in forma pauperis* ] if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) (emphasis added). This section of the PLRA has been referred to as the "three strikes" provision. *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000)

The Second Circuit has held that the three strikes provision applies to cases that were dismissed for failure to state a claim or for frivolousness even prior to the enactment of section 1915(g). *Id.* This interpretation of section 1915(g) is valid because the provision does not ***prevent*** an individual from bringing an action, it merely affects the inmate's ability to file the action ***in forma pauperis. Id.*** (citations omitted). A case may be conditionally dismissed under section 1915(g) even if the court originally granted plaintiff IFP status. *See McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998) (dismissing under section 1915(g) and finding that IFP status was "improvidently granted").

**\*4** If plaintiff has three strikes, section 1915(g) prevents plaintiff from filing a subsequent IFP action unless the plaintiff is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). The "imminent danger" exception to section 1915(g) has been interpreted to apply only if the plaintiff is imminent danger of serious physical injury "at the time the complaint is filed." *Malik v. McGinnis,* 293 F.3d 559, 562–63 (2d Cir.2002). In addition, the Second Circuit has held that there must be a nexus between the "imminent danger" and the legal claims asserted in the complaint. *Pettus v. Morgenthau,* 554 F.3d 293, 297 (2d Cir.2009).

A review of this plaintiff's litigation history, listed in the U.S. Party/Case Index,[2] shows that he has filed at least forty-six cases in courts all over the country, often raising many of the same claims regarding his alleged conviction. He has filed at least ten appeals in various circuits. Plaintiff has a multitude of strikes, and several of his cases have been conditionally dismissed based on the three-strikes rule, and subsequently subject to final dismissal after plaintiff failed to pay the filing fee. *See e.g. Luevano v. Bush,* No. 08–5038 (D.C.Cir. March 24, 2010) (denying plaintiff's petition for rehearing after three-strikes dismissal and failure to pay fee); *Luevano v. Trent,* No. 08–8274 (4th Cir. Feb. 26, 2009) (denying appeal of a three-strikes dismissal); *Luevano v. United States District Court,* No. 3:10–CV–335 (N.D.Tex. March 24, 2010) (adopting Magistrate Judge's recommendation that plaintiff's case be dismissed pursuant to section 1915(g)); *Luevano v. Criminal Court of Appeals of El Paso,* No. A–09–CA–942–LY (W.D.Tex. Jan. 5, 2010) (dismissing pursuant to section 1915(g) and citing *Luevano v. United States President of America,* No. 08–CV–53 (D.D.C. Jan. 2, 2008) (dismissed for failure to state a claim); *Luevano v. Board of Disciplinary Appeals,* No. 5:08–CV–107 (W.D.Tex. March 20, 2008) (frivolous); *Luevano v. Doe,* No. 1:07–CV–1025 (W.D.Tex. Jan. 18, 2008) (frivolous); *Luevano v. Perry,* No. 1:07–CV–1026 (W.D.Tex. Jan. 18, 2008) (frivolous); *Luevano v. Clinton,* No. 2:08–CV–1360 (E.D.N.Y. April 4, 2008) (frivolous); *Luevano v. Richardson,* No. 1:08–CV–781 (D.N.M. Oct. 31, 2008) (failure to state a claim); *Luevano v. Boykin,* No. 5:08–CV–1844 (N.D.Ohio Oct. 31, 2008) (failure to state a claim)). *See also Luevano v. Sanchez,* No. EP 09–CV–441, 2010 U.S. Dist. LEXIS 48026, \*4 & n. 4 (W.D.Tex. Jan. 4, 2010) (citing many strikes and overruling objections to Magistrate Judge's Report–Recommendation and dismissing plaintiff's case for three-strikes); *Luevano v.*

*Northern Circuit of Illinois,* No. 09–CV–128 (S.D.Ill. July 15, 2009) (conditional dismissal for three strikes) (citation of strikes omitted).

One of the most recent cases filed by this plaintiff in the District of Nevada makes many of the same allegations about his trial, including mentioning Hillary Rodham Clinton's 3:00 a.m. commercial. *Luevano v. El Paso Texas Corruptions,* No. 2:10–CV–784 (D.Nev.). Plaintiff filed his Nevada case on May 26, 2010. The District Court in Nevada has not yet addressed the complaint. Thus, although plaintiff sprinkles the words "imminent danger" throughout his complaints, there is absolutely no showing that plaintiff is in "imminent danger" of serious physical injury, and since this complaint ultimately deals with a challenge to his conviction in Texas, there is no nexus between the legal claims asserted in his complaint.

 **\*5** Because plaintiff has many strikes, his motion to proceed IFP would have to be denied, and plaintiff would be instructed to pay the $350.00 filing fee or risk dismissal of the action. However, a review of the merits shows that the court need not give plaintiff this option because the action is clearly frivolous and would be dismissed outright even if plaintiff paid the filing fee.

**V. *Merits***

Even a liberal reading of plaintiff's complaint cannot salvage the frivolous nature of his assertions. First, as stated above, although plaintiff has filed his complaint on a form for civil rights actions under 🔖 section 1983, none of the defendants act "under color of state law." To the extent that plaintiff is filing what he refers to as a "Writ of Mandamus" to "reopen" or "review," the court assumes that he is asking the court to order these defendants to reopen and review plaintiff's criminal conviction. A federal court is authorized to issue a writ in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff. 28 U.S.C. § 1361.

None of the defendants listed owe any duty to plaintiff regarding his Texas criminal conviction, regardless of which conviction he may be challenging. On April 15, 2010, United States District Judge Kathleen Cardone denied Luevano's petition for a writ of habeas corpus, brought under 🔖 28 U.S.C. § 2254, in which he challenged two convictions in 2010 for burglary of a habitation. *Luevano v. Abbott,* No. EP–10–CV–128, 2010 WL 1544605 (W.D. Tex. April 15,

2010). The court denied Luevano's petition for failure to exhaust his administrative remedies. *Id.* Plaintiff in this case has not indicated what convictions he wishes the defendants to reopen.[3] Plaintiff cites a civil action number in the caption of his complaint that appears to be the number of one of his previous cases. (Compl. at 1) (citing "08–CV–1360"). The case matching the civil action number cited by plaintiff is the Eastern District of New York action against Hillary Rodham Clinton that was dismissed as frivolous as stated above. It is impossible to discern from his complaint what plaintiff is challenging and what he actually would like the court to do, other than assign various attorneys to his case.

Based on a review of this complaint and of many other similar actions brought by plaintiff throughout the country, this court must recommend dismissing this action as frivolous, rather than transferring it to a district where it might have been brought. Dismissal of an action is proper when allegations are the "product of delusion or fantasy." 🔖 *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998). Additionally, because there is no possible way that plaintiff could state a valid claim against the defendants he has named, relating to his conviction, this court will recommend that no leave to amend be allowed and that the District Court certify that an appeal would not be taken in good faith.

 **\*6 WHEREFORE,** based on the findings above, it is

**ORDERED,** that plaintiff's motion for IFP (Dkt. No. 2) is **DENIED,** and it is

**RECOMMENDED,** that plaintiff's complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** pursuant to 🔖 28 U.S.C. § 1915(e)(2)(B) (i)-(ii) and it is

**RECOMMENDED,** that if the District Court approves this recommendation, the court certify that any appeal from this matter would not be taken in good faith pursuant to 🔖 28 U.S.C. § 1915(a)(3).

Pursuant to 🔖 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** 🔖 *Roldan v. Racette,* 984 F.2d 85, 89 (2d

Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 3338704

## Footnotes

1    This apparently has some connection to Secretary Clinton's television commercial.
2    https://pacer.uspci.uscourts.gov
3    The court notes that plaintiff has been bringing civil rights actions from prison since 2003, thus, it is possible that there are other convictions for which he has been incarcerated.

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2021 Thomson Reuters. No claim to original U.S. Government Works.    5

2015 WL 3408123
Only the Westlaw citation is currently available.
United States District Court,
W.D. Texas,
San Antonio Division.

Jaime LUEVANO, Petitioner,

v.

Hillary CLINTON. Unidentified U.S. Texas Judges,
Unidentified State Texas Judges, and Unidentified
High Rank U.S. Congress Officials, Respondents.

Civil No. SA–15–CV–142–DAE.
|
Signed May 27, 2015.

*MEMORANDUM OPINION AND ORDER*

DAVID ALAN EZRA, Senior District Judge.

**\*1** The matter before this Court is the status of this case. Petitioner has failed to timely comply with the Magistrate Judge's Show Cause Order directing Petitioner to (1) either pay the five dollar filing fee in this cause or file a complete In Forma Pauperis application and (2) explain why Petitioner's federal habeas corpus action should not be dismissed for failure to comply with this Court's prior sanctions Order imposed upon petitioner for the filing of frivolous and malicious civil rights lawsuits and frivolous federal habeas corpus actions. For the reasons set forth below, this Court **DISMISSES** Petitioner's current habeas corpus petition as frivolous and malicious and will impose sanctions to dissuade Petitioner from continuing his lengthy campaign of filing malicious, vindictive, federal habeas corpus filings in this and other federal courts.

## I. *Background*

Petitioner was convicted in El Paso County, Texas in March, 2010 of burglary of a habitation with intent to commit theft (El Paso trial court no. 20070D04789) and burglary of a habitation with intent to commit aggravated sexual assault on a child (El Paso trial court no. 20070D04788) and received 25–year and life sentences, respectively. The Texas Court of Appeals for the Eighth District (El Paso) affirmed petitioner's convictions in both cases and the Texas Court of Criminal

Appeals refused discretionary review. *See Luevano v. State,* 2012 WL 1883117 (Tex.App.-El Paso May 23, 2012, *pet. ref'd Sept. 12, 2012* ) (affirming conviction for burglary of a habitation with intent to commit theft and 25–year sentence); *Luevano v. State,* 2012 WL 1883115 (Tex.App.-El Paso May 23, 2012, *pet ref'd Oct. 10, 2012* ) (affirming conviction for burglary of a habitation with intent to commit aggravated sexual assault upon a child and life sentence), *cert. denied,* 134 S.Ct. 89 (October 7, 2013). Petitioner did not thereafter file a state habeas corpus action challenging either of his convictions.

In January, 2011, petitioner filed a civil action in the United States District Court for the Northern District of Texas seeking a writ of mandamus to compel state officials to investigate alleged wrongdoing at the TDCJ's Connally Unit. That Court transferred the cause to this Court. The Clerk docketed that action as cause no. SA–11–CA–131–OG. In a Dismissal Order issued February 28, 2011, District Judge Orlando L. Garcia noted Petitioner's lengthy history of frivolous litigation in this and other federal courts, denied Petitioner leave to proceed In forma pauperis, dismissed the action for failure to prosecute and pay the filing fee, imposed a monetary sanction of one hundred dollars, and ordered "that in any future civil pleading Jaime Luevano files or attempts to file in any United States District Court to open a civil case, he must set out in the pleading a complete history of his previous civil litigation in federal courts, identifying each case by name and cause number, stating the court in which each case was filed, and stating the result of each case." [1]

**\*2** Disregarding Judge Garcia's sanctions Order, in 2012, Petitioner brought a civil action seeking a writ of mandamus in the Waco Division of this Court (docketed in this Court as cause no. W–12–CA–049–WSS) which District Judge Walter S. Smith dismissed based upon Petitioner's failure to comply with filing restrictions set forth by District Judge Orlando L. Garcia in cause no. SA–11–CA–131–OG (including a sanction barring Petitioner from filing any action in this Court until Petitioner first paid all monetary sanctions imposed in that cause) and in which Judge Smith expressly warned Petitioner that further sanctions would be imposed if Petitioner continued to disregard Judge Garcia's sanctions Order. [2]

Once more disregarding Judge Garcia's sanctions Order, Petitioner submitted a federal habeas corpus action to the United States District Court for the Northern District of Texas, which transferred same to the El Paso Division of this Court in

January, 2014. The Clerk docketed Petitioner's action as cause no. EP–14–CA–20–PRM. In his pro se Section 2254 habeas corpus action, Petitioner sought to challenge his El Paso County burglary convictions. In an Order issued March 26, 2014, District Judge Philip R. Martinez dismissed Petitioner's habeas action in that cause for failure to comply with multiple Court Orders. [3]

Petitioner submitted a Section 2254 federal habeas corpus action to a federal court in Ohio, which transferred same to the San Antonio Division of this Court. While purporting to challenge his El paso County state criminal convictions, Petitioner named as respondents in that federal habeas corpus petition the Governor of Ohio, unspecified "U.S. Texas Judges," and the Director of the Texas Department of Criminal Justice's Institutional Division. The Clerk docketed Petitioner's new Section 2254 action on June 12, 2014 as cause no. SA–14–CA–543. In his Section 2254 petition (ECF no. 1), Petitioner argued in rather vague and ambiguous terms that (1) unidentified videotaped evidence shows Petitioner is not guilty, (2) Child Protective Service reports and police reports (which showed Petitioner's minor accuser in the burglary of a habitation with intent to commit aggravated sexual assault case) were not submitted to the trial court to show Petitioner's accuser was lying, [4] (3) unidentified persons tampered with the blood (DNA) samples used against Petitioner at trial, (4) Petitioner's trial counsel rendered ineffective assistance by failing to (a) file unspecified motions to obtain unidentified missing evidence, (b) arrange for Petitioner to talk with a court-appointed defense investigator, (c) prevent the trial judge from abusing and mistreating Petitioner's counsel, (d) ensure the defense investigator investigated Petitioner's medications, (e) possess adequate training, and (f) object to or otherwise prevent prosecution witnesses from testifying while under medication and hypnosis, (5) the Texas Court of Appeals used new laws, rules, and cases to issue a fraudulent opinion affirming Petitioner's convictions, and (6) Petitioner's child-accuser in the burglary with intent to commit aggravated sexual assault case never went to the hospital and was never examined by a physician, nurse, or other medical professional.

**\*3** In an Order to Show Cause issued June 19, 2014 (ECF no. 2 in cause SA–14–CA–543–DAE), the Magistrate Judge directed Petitioner to either pay the five dollar filing fee or file a complete In forma pauperis application together with a certified copy of Petitioner's inmate trust account statement establishing the current balance in Petitioner's TDCJ inmate trust account. Petitioner responded to the Show Cause Order

by first requesting additional time within which to comply with same and seeking the Magistrate Judge's recusal (ECF no. 3 in SA–14–CA–543–DAE). In an Order issued July 10, 2014 (ECF no. 4 in SA–14–CA–543–DAE), this Court denied Petitioner's motion to recuse the Magistrate Judge but granted Petitioner's motion for additional time to comply with his financial obligations in this cause.

On August 5, 2014 (ECF no. 5 in SA–14–CA–543–DAE) Petitioner sought leave to amend his federal habeas corpus petition and submitted various documents establishing Petitioner then had more than eleven dollars in his inmate trust account with which to pay the five dollar filing fee in this cause. In an Order issued August 11, 2014 (ECF no. 6 in SA–14–CA–543–DAE), the Magistrate Judge granted Petitioner's motion for leave to amend, directed Petitioner to file an amended petition within 21 days, and denied Petitioner's request for leave to proceed In forma pauperis. Petitioner then appealed the Magistrate Judge's denial of his request for leave to proceed In forma pauperis (ECF no. 7 in SA–14–CA–543–DAE) and filed a motion to compel the United States Attorney General to file criminal charges against officials at the TDCJ's Connally Unit (ECF no. 9 in SA–14–CA–543–DAE). In an Order issued August 21, 2014 (ECF no. 8 in SA–14–CA–543–DAE), this Court denied Petitioner's appeal of the Magistrate Judge's decision denying Petitioner's In forma pauperis request. Petitioner thereafter filed an interlocutory appeal to the Fifth Circuit (ECF no. 10 in SA–14–CA–543–DAE) which the Fifth Circuit dismissed in an Order issued January 14, 2015 in cause no. 14–50956 filed in that appellate court.

In a Memorandum Opinion and Order issued October 16, 2014 in cause no. SA–14–CA–543–DAE, this Court (1) dismissed without prejudice Petitioner's federal habeas corpus action, (2) directed TDCJ officials to withdraw five dollars from Petitioner's inmate trust account and pay same to the Clerk, (3) directed the Clerk to refuse to accept transfers of any future federal habeas corpus actions filed by Petitioner until Petitioner paid the sanctions imposed upon him and complied with the conditions set forth in the Dismissal Order in cause no. SA–11–CA–131–OG, and (4) denied Petitioner a Certificate of Appealability. Petitioner filed no Notice of Appeal from the Judgment in SA–14–CA–543–DAE.

## II. *Proceedings in this Case*

Petitioner filed this purported federal habeas corpus action in the Fifth Division (Duluth) of the United States District Court for the District of Minnesota, naming as respondents herein former United States Secretary of State Hillary Clinton, unidentified "U.S. Texas Judges," unidentified "State Tex. Judges," and unidentified "High Rank U.S. Congress Officials." As grounds for relief, Petitioner argues in his original petition that (1) he is entitled to have the United Nations compel Hillary Clinton to submit to a polygraph examination, (2) certain DNA evidence was lost in his case and later discovered in time to entrap Petitioner for an unspecified offense, (3) former Secretary of State Clinton was somehow involved in an unspecified manner in a plot to have Petitioner wrongfully convicted of an unspecified offense in El Paso, Texas, (4) Professor Peter Henning of Detroit, Michigan was somehow involved in a plot against Petitioner, (5) unspecified persons were placed in the witness protection program as part of the plot against Petitioner, and (6) Petitioner is entitled to have the FBI and U.S. Marshals investigate the plot against him (ECF no. 1).

**\*4** To date, Petitioner has neither paid the five dollar filing fee in this Section 2254 action nor filed his amended petition, as directed in the Order issued March 4, 2015 (ECF no. 6). The deadline for the filing of Petitioner's amended petition has passed. While Petitioner has filed a motion requesting additional time within which to comply with the Show Cause Order (ECF no. 7), that motion furnishes no coherent, rational, or even intelligible explanation as to why Petitioner failed timely comply with the Show Cause Order. Nor does that motion offer any rational explanation as to why Petitioner needs additional time to obtain and file a copy of his TDCJ inmate trust account statement or to pay the modest filing fee herein. In fact, Petitioner's motion for extension of time and for leave to amend (while complaining cryptically about the quality of the food Petitioner has received recently, the alleged denial to plaintiff of envelopes, and the alleged opening of Petitioner's "legal mail" by TDCJ mail room or law library personnel) does not explain why, despite the exercise of due diligence, Petitioner was unable to timely comply with the Magistrate Judge's Show Cause Order. The Court will deny Petitioner's motions for leave to amend and for extension of time because, as explained below, any such extension or amendment would be wholly futile. Petitioner is not entitled to pursue federal habeas corpus relief under Title 28 U.S.C. Section 2241 against any of the persons identified as respondents in Petitioner's current federal habeas corpus petition. Petitioner is also no longer entitled to pursue federal habeas corpus review of his convictions under Section

2254 because the AEDPA's one-year statute of limitations on a Section 2254 federal habeas corpus petition challenging Petitioner's convictions has expired. Furthermore, Petitioner has offered no rational explanation for his refusal to furnish this Court with a certified copy of Petitioner's TDCJ inmate trust account statement which statement is available from the law librarian at Petitioner's TDCJ facility.

### III. *Petitioner's 2241 Action is Frivolous and Malicious*

In his two most recent Section 2241 federal habeas corpus actions filed in other courts, which were transferred to this Court, Petitioner named as respondents a host of federal and state officials who have never had custody of Petitioner's persons, including a variety of unidentified state and federal judicial officers, the Governor of Ohio, and the former United States Secretary of State. None of these individuals is a proper respondent in an action for federal habeas corpus relief filed by a prisoner in the custody of the Texas Department of Criminal Justice's Institutional Division.

*See Rumsfeld v. Padilla,* 542 U.S. 426, 434–42 (2004) (holding the commander of the United States naval brig facility where the Petitioner was housed was the proper respondent in a federal habeas corpus action, not the United States Secretary of Defense).

**\*5** The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is "the person who has custody over [the Petitioner]." The consistent use of the definite article in reference to the custodian indicates that there is generally only one proper respondent to a given prisoner's habeas petition. This custodian, moreover, is "the person" with the ability to produce the prisoner's body before the habeas court. We summed up the plain language of the habeas statute over 100 years ago in this way: "[T]hese provisions contemplate a proceeding against some person who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary."

*Wales v. Whitney,* 114 U.S. 564, 574, 5 S.Ct. 1050, 29 L.Ed. 277 (1885) (emphasis added).

In accord with the statutory language and *Wales'* immediate custodian rule, longstanding practice confirms that in habeas challenges to present physical confinement-"core challenges"-the default rule is that the proper respondent is

the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official.

*Rumsfeld v. Padilla*, 542 U.S. at 434–36 (citations omitted).

Petitioner alleges no facts showing that any of the persons identified as a respondent in Petitioner's original federal habeas corpus petition in this cause has ever exercised custody over Petitioner's person. Thus, Petitioner's Section 2241 action must be dismissed as frivolous. Furthermore, given Petitioner's history of filing his Section 2241 actions in places where he is not physically incarcerated and in refusing to comply with this Court's prior sanctions Orders, Petitioner's filing of the present action was likewise malicious in nature.

Moreover, this Court's finding that Petitioner's action in filing this purported federal habeas corpus action was malicious in nature is also supported by the fact Petitioner's most recent pleadings in this cause, filed in response to the Magistrate Judge's Show Cause Order, do not make any good faith effort to address any of the concerns contained in the Show Cause Order. Rather, Petitioner's filing of this action appears to be yet another attempt by Petitioner to litigate complaints about the conditions of Petitioner's current confinement without complying with 28 U.S.C. Section 1915(g). More specifically, Petitioner has once more attempted to employ a purported federal habeas corpus action to complain about the conditions under which he is currently being incarcerated. Complaints about conditions of confinement must be brought in a civil rights complaint, not a federal habeas corpus petition. *See Preiser v. Rodriguez*, 411 U.S. 475, 498–99 (1973) (recognizing the right of state prisoners to bring federal civil rights actions to challenge the conditions of their confinement); *Cook v. Tex. Dep't of Criminal Justice*, 37 F.3d 166, 168 (5th Cir.1994) ("Section 1983 is an appropriate legal vehicle to attack unconstitutional parole procedures or conditions of confinement."). By filing three or more frivolous civil rights actions in the federal courts, Petitioner has abdicated his right to bring new federal civil actions challenging the conditions of his confinement without first establishing he is "under imminent danger of serious physical injury." *Jackson v. Johnson*, 475 F.3d 261, 265 (5th Cir.2007) ("The PLRA's three-strikes provision bars prisoners from proceeding IFP in a civil action or in an appeal of a

judgment in a civil action if, while incarcerated, the prisoner has had three prior actions or appeals dismissed for being frivolous or malicious or for failure to state a claim, unless the prisoner is in imminent danger of serious physical injury."); 28 U.S.C. § 1915(g).

**\*6** The PLRA's "three strikes" rule does not ordinarily bar prisoner from proceeding in forma pauperis in a habeas action. *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir.1997). This does not mean, however, that Petitioner may circumvent Section 1915(g)'s three strikes rule by filing a series of purported Section 2241 actions against state and federal officials who have no relationship to the place where Petitioner is currently incarcerated for the purpose of challenging the conditions under which Petitioner is currently incarcerated or to assert frivolous civil rights conspiracy claims. Petitioner has made no effort to allege any specific facts showing he is currently under imminent danger of serious physical injury from any of the persons identified as respondent in Petitioner's federal habeas corpus petition herein. Nor has Petitioner alleged any specific facts to support his conclusory civil rights conspiracy claims. Conclusory allegations of conspiracy in a Section 1983 lawsuit are insufficient, absent reference to material facts, to state a substantial claim of federal conspiracy or withstand scrutiny under either 28 U.S.C. Section 1915(e) or Federal Rule of Civil Procedure Rule 12(b)(6). *See Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir.1999) ( "Plaintiffs must develop facts from which a trier of fact could reasonably conclude that Neeley agreed with others to commit an illegal act and that a deprivation of constitutional rights occurred ."); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir.1992) (holding, in cases where the plaintiff is proceeding in forma pauperis, that conclusory allegations of a civil rights conspiracy are subject to dismissal as frivolous); *Turner v. Upton County*, 967 F.2d 181, 186 (5th Cir.1992) (holding global allegations of conspiracy, unsubstantiated with any evidence supporting same, were insufficient to support an inference that a county official had conspired with a private party to plant evidence and maliciously prosecute the plaintiff); *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir.1991) (holding civil rights conspiracy claims must include allegations of specific operative facts); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir.1990) ("In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a

deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.").

Petitioner may not employ 28 U.S.C. Section 2241 as a subterfuge to circumvent Section 1915(g)'s "three strikes" rule and file multiple frivolous civil rights action under the guise of pursuing federal habeas corpus relief. That is because civil rights actions and federal habeas corpus actions pursue two very different goals. A petition for writ of habeas corpus is properly directed at the sole issue of the legality of a prisoner's current confinement and seeks the Petitioner's release from custody: "It is clear, not only from the language of Sections 2241(c)(3) and 2254(a), but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." Preiser, 411 U.S. at 484. Petitioner's most recent motions make clear Petitioner is not asserting legitimate claims for federal habeas corpus relief, but rather is attempting to employ Section 2241 to assert what are clearly claims for other forms of civil remedies, including mandamus.

*7 Petitioner's repeated efforts to utilize Section 2241 to circumvent Section 1915(g), and ignore this Court's prior sanctions Orders, will be addressed hereinafter in the section of this Order addressing the issue of sanctions.

IV. *Limitations in Section 2254 Actions*

Insofar as Petitioner's pro se federal habeas corpus petition herein can be liberally construed as seeking relief from Petitioner's El Paso County burglary convictions pursuant to 28 U.S.C. Section 2254, Petitioner's petition is untimely.

This Court's review of Petitioner's claims for federal habeas corpus relief is governed by the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Tassin v. Cain,* 517 F.3d 770, 776 n. 18 (5th Cir.2008) (holding the AEDPA applies to habeas corpus cases filed in the United States District courts on or after April 24, 1996). "The AEDPA provides for a one-year limitation period during which a state prisoner may seek

federal habeas review of his judgment of conviction, running, in this case, from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Palacios v. Stephens,* 723 F.3d 600, 604 (5th Cir.2013) (internal quotation marks omitted). A criminal conviction is "final" for purposes of the AEDPA's one-year limitations period when the defendant has exhausted his state appeals and either (1) the time for requesting a petition for certiorari review has passed or (2) the Supreme Court has affirmatively denied such a petition. *Caspari v. Bohlen,* 510 U.S. 383, 390 (1994); *Paredes v. Quarterman,* 574 F.3d 281, 287 (5th Cir.2009), *cert. denied,* 131 S.Ct. 1050 (2011).

Petitioner's conviction for burglary of a habitation with intent to commit theft was affirmed on direct appeal on May 23, 2012 by the Texas Eighth Court of Appeals. The Texas Court of Criminal Appeals refused discretionary review on September 12, 2012. Petitioner did not thereafter seek to challenge his conviction and sentence through the filing of a petition for writ of certiorari with the United States Supreme Court. The deadline for filing a certiorari petition is ordinarily ninety days from the date state court of discretionary review has issued an order denying discretionary review. *Paredes v. Quarterman,* 574 F.3d at 287 n. 4 (*citing* SUP.CT. R. 13.1). Thus, Petitioner's conviction became final for purposes of the AEDPA's one-year limitations period not later than December 12, 2012, i.e., the ninety-first day after the Texas Court of Criminal Appeals denied Petitioner's petition for discretionary review. The deadline for filing a federal habeas corpus petition challenging that conviction expired not later than December 12, 2013.

Petitioner's conviction for burglary of a habitation with intent to commit aggravated sexual assault upon a child was affirmed on direct appeal on May 23, 2012 by the Texas Eighth Court of Appeals. The Texas Court of Criminal Appeals refused discretionary review on October 10, 2012. The United States Supreme Court denied Petitioner's petition for writ of certiorari on October 7, 2013, the date that conviction became final for purposes of the AEDPA's statute of limitations. The deadline for filing a federal habeas corpus petition attacking that conviction expired October 7, 2014.

*8 The AEDPA does provide for the tolling of the limitations period during the pendency of an application for state habeas corpus relief. 28 U.S.C. § 2244(d)(2). Petitioner does not allege that he filed an application for state habeas corpus relief

challenging either of his burglary convictions. This Court's independent examination of the public records of the Texas Court of Criminal Appeals and the 409th Judicial District Court of El Paso County, Texas reveals Petitioner has, to date, failed to file an application for state habeas corpus review of either of his burglary convictions.

Petitioner's El Paso County conviction for burglary with intent to commit theft became final, and his limitation period began to run, on December 12, 2012, the date on which the 90–day period in which to seek review of his conviction with the United States Supreme Court expired. *See Palacios, 723 F.3d at 604; Roberts v. Cockrell,* 319 F.3d 690, 694 (5th Cir.2003); 28 U.S.C. § 2244(d)(1)(A). The deadline for filing Petitioner's federal habeas corpus petition challenging that conviction expired December 12, 2013. Petitioner's federal habeas corpus petition in this cause was signed but not dated. Nonetheless, that petition was received by the federal court in Duluth, Minnesota on February 9, 2015, more than thirteen months after the deadline for filing a Section 2254 action attacking that conviction expired.

Petitioner's conviction for burglary with intent to commit aggravated sexual assault upon a child became final on October 7, 2013. The deadline for filing a federal habeas corpus petition challenging that conviction expired October 7, 2014. Petitioner's federal habeas corpus petition was received by the federal court in Duluth more than four months after the deadline for filing a Section 2254 petition attacking that conviction expired. Unless Petitioner is entitled to the benefit of the doctrine of equitable tolling, his pro se habeas corpus petition is untimely.

The Supreme Court has made clear a federal habeas corpus Petitioner may avail himself of the doctrine of equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *McQuiggin v. Perkins,* 133 S.Ct. 1924, 1931 (2013). "Equity is not intended for those who sleep on their rights." *Manning v. Epps.* 688 F.3d 177, 183 (5th Cir.2012), *cert. denied,* 133 S.Ct. 1633 (2013). Even those petitioners represented by incompetent counsel are required to exercise due diligence in pursuing their rights. *See id.* at 184–85 (holding delay of 19 months in filing federal habeas corpus petition was the antithesis of due diligence). Ineffective

assistance of counsel is irrelevant to the tolling decision because a prisoner has no right to counsel during a post-conviction collateral attack upon a criminal conviction. *United States v. Petty,* 530 F.3d 361, 366 (5th Cir.2008). Mere attorney error or neglect will not establish extraordinary circumstances warranting equitable tolling. *Id.*

**\*9** Any arguments Petitioner might wish to make suggesting he was either ignorant of, or unfamiliar with, the AEDPA's one-year limitations period, incarcerated, and proceeding without the assistance of counsel do not rise to the level of extraordinary circumstances sufficient to warrant equitable tolling. The Fifth Circuit has repeatedly held neither excusable neglect nor ignorance of the law is sufficient to justify equitable tolling. *See Sutton v. Cain,* 722 F.3d 312, 316–17 (5th Cir.2013) (a garden variety claim of excusable neglect does not warrant equitable tolling); *Whitt v. Stephens County,* 529 F.3d 279, 283 n. 7 (5th Cir.2008) (neither excusable neglect nor ignorance of the law is sufficient to justify equitable tolling of limitations). Petitioner has failed to allege any facts showing he is entitled to equitable tolling of the AEDPA's one-year statute of limitations in this cause.

*See Pace v. DiGuglielmo,* 544 U.S. at 418 ("a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."); *In re Campbell,* 750 F.3d 523, 533 (5th Cir.2014) ("Equitable tolling is to be 'applied restrictively' and should be entertained only in cases presenting 'rare and exceptional circumstances where it is necessary to preserve a plaintiffs claims when strict application of the statute of limitations would be inequitable.' "). Petitioner's February, 2015 federal habeas corpus petition attacking his El Paso County convictions is clearly untimely and must be dismissed pursuant to 28 U.S.C. Section 2244(d).

## V. *Certificate of Appealability*

Under the AEDPA, before a Petitioner may appeal the denial of a habeas corpus petition filed under Section 2254, the Petitioner must obtain a Certificate of Appeability ("COA"). *Miller–El v. Johnson,* 537 U.S. 322, 335–36 (2003); 28 U.S.C. § 2253(c)(2). Likewise, under the AEDPA, appellate review of a habeas petition is limited to the issues on which a COA is granted. *See Crutcher v. Cockrell,* 301 F.3d 656, 658 n. 10 (5th Cir.2002) (holding that a COA is granted on

an issue-by-issue basis, thereby limiting appellate review to those issues); *Lackey v. Johnson,* 116 F.3d 149, 151 (5th Cir.1997) (holding that the scope of appellate review of denial of a habeas petition limited to the issues on which COA has been granted).

A COA will not be granted unless the Petitioner makes a substantial showing of the denial of a constitutional right. *Tennard v. Dretke,* 542 U.S. 274, 282 (2004); *Miller–El v. Johnson,* 537 U.S. at 336; *Slack v. McDaniel,* 529 U.S. 473, 483 (2000); *Barefoot v. Estelle,* 463 U.S. 880, 893 (1983). To make such a showing, the Petitioner need not show he will prevail on the merits but, rather, must demonstrate that reasonable jurists could debate whether (or, for that matter, agree) the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Tennard,* 542 U.S. at 282; *Miller–El,* 537 U.S. at 336.

**\*10** The showing necessary to obtain a COA on a particular claim is dependent upon the manner in which the District Court has disposed of a claim. "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller–El,* 537 U.S. at 338. In a case in which the Petitioner wishes to challenge on appeal this Court's dismissal of a claim for a reason not of constitutional dimension, such as procedural default, limitations, or lack of exhaustion, the Petitioner must show jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and whether this Court was correct in its procedural ruling. *Slack,* 529 U.S. at 484.

Reasonable minds could not disagree with this Court's conclusion that Petitioner's federal habeas corpus petition fails to identify a proper respondent. Likewise, reasonable minds could not disagree with this Court's conclusions that, insofar as Petitioner's pro se federal habeas corpus petition can be liberally construed as challenging Petitioner's El Paso County burglary convictions, his petition is untimely and Petitioner is not entitled to the benefit of the doctrine of equitable tolling.

## VI. Sanctions

As this Court explained in its Memorandum Opinion and Order issued October 17, 2014 in cause no. SA–14–CA–543–DAE, Petitioner's abuse of the federal judicial system has few counterparts. Petitioner has repeatedly filed actions possessing no arguable legal merit but which nonetheless required the expenditure of considerable amounts of this Court's scarce judicial resources. Petitioner has repeatedly ignored this Court's prior warnings and previous impositions of sanctions. "No one, rich of poor, is entitled to abuse the judicial process." *Green v. Carlson,* 649 F.2d 285, 287 (5th Cir.). "Flagrant abuse of the judicial process can enable one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *Id.* Extraordinary abuses of the judicial system require extraordinary action.

In this Court's Memorandum Opinion and Order issued October 16, 2014 in cause no. SA–14–CA–543–DAE, the Clerk was directed to refrain from accepting via transfer any future federal habeas corpus actions filed in other federal courts by Petitioner absent proof Petitioner had complied with this Court's prior sanctions Order in cause SA–11–CA–131–OG. Additionally, having invoked this Court's jurisdiction on multiple occasions for the purpose of filing frivolous federal civil rights actions under the guise of federal habeas corpus actions, Petitioner will be directed to immediately cease and desist from filing any further federal habeas corpus actions in any federal court in this nation without first (1) presenting that federal court with a copy of this Memorandum Opinion and Order and (2) obtaining leave of court from the federal court in which Petitioner wishes to file same. In the event Petitioner fails to comply with this Order, Petitioner will be found in contempt of this Court and punished with monetary sanctions in the amount of four hundred dollars per violation.

**\*11** Accordingly, it is hereby **ORDERED** that:

1. The referral of this cause to the Magistrate Judge is **WITHDRAWN.**

2. Petitioner's application for leave to proceed in forma pauperis (*ECF no. 1* ), is **DENIED.** For the reasons discussed above, Petitioner's pleadings in this cause establish that Petitioner has not filed a federal habeas corpus action in this cause in good faith, but rather has filed a civil rights action masquerading as a federal habeas corpus action and sought

to obtain injunctive relief against various state and federal officials who have never exercised custody over Petitioner's person. Petitioner has failed to allege any facts showing he is currently under imminent danger of serious bodily injury.

3. Insofar as Petitioner actually seeks federal habeas corpus relief from his El Paso County convictions under 28 U.S.C. § 2254, Petitioner's federal habeas corpus petition, filed February 9, 2015, *ECF no. 1,* is **DISMISSED** as untimely pursuant to 28 U.S.C. § 2244(d).

4. Petitioner is **DENIED** a Certificate of Appealability on all his claims in this action.

5. Insofar as Petitioner seeks federal habeas corpus relief pursuant to Title 28 U.S.C. § 2241, Petitioner's federal habeas corpus petition is **DISMISSED** based upon Petitioner's failure to identify with specificity any respondent who currently possesses custody of Petitioner's person.

6. Insofar as Petitioner seeks declaratory, mandamus, or injunctive relief against any of the persons named as respondents in Petitioner's federal habeas corpus petition, Petitioner's claims are **DISMISSED AS FRIVOLOUS** in accordance with 28 U.S.C. Sections 1915(e)(2)(B)(i) and 1915A(b)(1).

7. Petitioner's motion requesting an order directing respondents to furnish Petitioner with copies of unspecified videotape recordings, filed March 25, 2015 (ECF no. 8), is in all respects **DENIED.**

8. Petitioner's motion for extension of time to comply with the Show Cause Order and for leave to amend, filed April 3, 2015 (ECF no. 7), is in all respects **DENIED.**

9. All other pending motions are **DISMISSED AS MOOT.**

10. Petitioner shall immediately **CEASE and DESIST,** i.e., Petitioner is henceforth **PROHIBITED,** from filing, attempting to file, or submitting for filing with any federal court any legal action of any type or manner, regardless of whether styled as a federal civil rights action or a federal habeas corpus action, which purports to challenge the validity of either of Petitioner's El Paso County convictions in state cause nos. 20070D04789 or 20070D04788 unless Petitioner first (1) submits to the federal court in which Petitioner is

attempting to file such action a copy of this Memorandum Opinion and Order and (2) obtains express written permission from the federal court in which Petitioner seeks to file his new action for the filing of same. Violation of the foregoing prohibition will result in the imposition of monetary sanctions in the amount of four hundred dollars per violation, with such sanctions to be deducted from Petitioner's TDCJ inmate trust account and transmitted to the Clerk of this Court without regard to the balance in Petitioner's inmate trust account.

**\*12** 11. Petitioner's current custodian, the Texas Department of Criminal Justice, shall immediately withdraw from Petitioner's TDCJ inmate trust account and transmit to the Clerk of this Court any and all funds currently in that account up to the amount of one hundred dollars (the amount of monetary sanctions previously imposed by this Court in cause no. SA–11–CA–131–OG). In the event the current balance in Petitioner's TDCJ inmate trust account is insufficient to pay this amount of monetary sanctions, Petitioner's custodian shall (1) immediately transmit any and all funds in said account to the Clerk of this Court, regardless of the amount of funds currently in said account and (2) transmit any and all new deposits into Petitioner's TDCJ inmate trust account to the Clerk of this Court until the total amount of monetary sanctions imposed in cause no. SA–11–CA–131–OG shall be paid in full, i.e., until a total of one hundred dollars has been paid to the Clerk of this Court. The manner of transmission or payment made by Petitioner's custodian to the Clerk of this Court pursuant to this Memorandum Opinion and Order shall in any manner acceptable to the Clerk of this Court.

12. The Clerk shall send Certified copies of (1) this Memorandum Opinion and Order and the Judgment in this cause and (2) the Court's Memorandum Opinion and Order and Final Judgment in cause SA–14–CA–543–OG to both the TDCJ Office of General Counsel, P.O. Box 13084, Austin, Texas 78711, and the TDCJ Inmate Trust Fund, Attn: Mr. Clark, P.O. Box 629, Huntsville, Texas 77342 for the express purpose of permitting those state officials to determine whether Petitioner is subject to loss of good conduct time credits pursuant to Section 498.0045 of the Texas Government Code.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 3408123

## Footnotes

| 1 | A copy of Judge Garcia's Dismissal Order issued February 28, 2011 (ECF no. 8 in cause no. SA–11–CA–131–OG) was attached to this Court's Memorandum Opinion and Order in cause no. SA–14–CA–543–DAE, which is attached to this Memorandum Opinion and Order. |
|---|---|
| 2 | A copy of Judge Smith's Order issued March 5, 2012 (ECF no. 6 in cause no. W–12–CA–049–WSS) was attached to this Court's Memorandum Opinion and Order in SA–14–CA–543–DAE which is attached hereto. |
| 3 | A copy of Judge Martinez's Dismissal Order of March 26, 2014 (ECF no. 11 in cause no. EP–14–CA–20–PRM) was attached to this Court's Memorandum Opinion and Order in cause no. SA–14–CA–543–DAE which is attached hereto. Judge Martinez noted in footnote 8 of his Dismissal Order the Petitioner's lengthy history of filing actions in this and other federal courts which have been dismissed for failure to prosecute and failure to comply with Court Orders. |
| 4 | Petitioner's arguments in support of his claims for relief in his federal habeas corpus petition in cause no. SA–14–CA–543–DAE disregarded the fact Petitioner was convicted in his El Paso County case based on DNA evidence recovered from the minor victim's buttocks. |

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue Flag – Appeal Notification

Appeal Filed by JAIME LUEVANO v. UNITED STATES TEXAS JUDGES, ET AL., 3rd Cir., January 15, 2021

2020 WL 7181058
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Jaime LUEVANO, Petitioner,
v.
U.S. TEXAS JUDGES, et al., Respondents.

CIVIL ACTION NO. 20-CV-5840
|
Filed 12/07/2020

**Attorneys and Law Firms**

Jaime Luevano, Gatesville, TX, pro se.

**MEMORANDUM**

JONES, II J.

**\*1** Jaime Luevano ("Petitioner"), a prisoner incarcerated at the Hughes Unit in Gatesville, Texas, has filed an "Emergency Writ of Mandamus for Hearings – Etc." against "U.S. Texas Judges, O.I.G.," President Donald Trump, and former President Barack Obama. (ECF No. 1.) A review of public records reveals that "Luevano has a long history of filing frivolous and abusive litigation." *Yieson v. Akwitti*, Civ. A. No. 20-823, 2020 WL 6577504, at \*1 (W.D. Tex. Oct. 30, 2020) (citing examples of Luevano's prior frivolous filings in a case he attempted to file in the name of another inmate to raise his own claims). Accordingly, federal judges, both inside and outside of Texas, have precluded him from proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915(g), and have imposed sanctions and injunctions upon him when he continued to exhibit abusive filing behavior. *See, e.g.*, *Luevano v. Skyview Unit Psych Doctors*, N.D. Tex. Civ. A. No. 19-2186 (Sept. 17, 2019 Notice re: Application of Prior Sanction Order); *Luevano v. U.S. Circuit Judges of D.C.*, D.D.C. Civ. A. No. 18-1297 (June 14, 2018 Memorandum and Order); *Luevano v. Clinton*, Civ. A. No. 15-142, 2015 WL 3408123, at \*1–\*2 (W.D. Tex. May 27, 2015).

In his current filing in this Court, Luevano claims that his life is in danger because federal judges in Texas are "concealing the O.I.G. to do crimes in general by satellites" and denying him access to the courts by concluding he is a three-striker pursuant to § 1915(g), and imposing sanctions and injunctions that impede his ability to file lawsuits. (ECF No. 1 at 1.) Luevano asks this Court to grant him a jury trial and appoint a special master. (*Id.*) He also generally alleges that his life and health are in danger because he is "expose[d] to the (virus) coronavirus that this [satellites] (transmit) use on [him]." (*Id.*)

Until recently, this Court would have been precluded from addressing Petitioner's filing unless and until he either paid the applicable filing fee or was granted leave to proceed *in forma pauperis*. *See, e.g.*, *Francis v. State of N.J. Office of Law Guardian*, 289 F. App'x 472, 474 (3d Cir. 2008) (per curiam) (explaining that district court erred in addressing complaint before IFP was granted, because the "complaint was not yet subject to dismissal"); *Urrutia v. Harrisburg Cty. Police Dep't*, 91 F.3d 451, 458 & n.13 (3d Cir. 1996) (explaining that an action commences when a plaintiff pays the fees or following a determination that the litigant is entitled to *in forma pauperis* status). However, in *Brown v. Sage*, 941 F.3d 655, 660 (3d Cir. 2019) (en banc), the United States Court of Appeals for the Third Circuit adopted a "flexible approach" that permits the screening of cases filed by prisoners pursuant to 28 U.S.C. § 1915A even if the prisoner has neither paid the fees nor been granted *in forma pauperis* status.

Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a pleading or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted." *Id.* § 1915A(b)(1). A pleading is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), or is "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995). Factual allegations that are "fanciful," "fantastic," or "delusional" are considered "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992). In addition, the Court must dismiss the matter if it determines subject matter

jurisdiction is lacking. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). As Luevano is proceeding *pro se*, the Court construes his allegations liberally. *See* *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

**\*2** The Court understands Luevano to be bringing his Petition pursuant to 28 U.S.C. § 1361, which provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, courts have held that the statute does not apply to judges and judicial employees. *See* *Semper v. Gomez*, 747 F.3d 229, 250 (3d Cir. 2014) (citing *Trackwell v. United States Government*, 472 F.3d 1242, 1246 (10th Cir. 2007) (noting that "[f]or a district court to issue a writ of mandamus against an equal or higher court would be remarkable" and holding that "the Supreme Court is not an 'agency' within the meaning of § 1361"); *Liberation News Service v. Eastland*, 426 F.2d 1379, 1384 (2d Cir. 1970) (stating that, in enacting § 1361, "Congress was thinking solely in terms of the executive branch")). So,

the Court must dismiss Luevano's Petition for lack of subject matter jurisdiction to the extent he seeks mandamus relief against unspecified federal judges in Texas.

To the extent Luevano brings his Petition against Presidents Trump and Obama, it is frivolous. "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). "[A] writ of mandamus [ ] represents an extraordinary remedy." *Semper*, 747 F.3d at 251. Luevano has not shown an entitlement to a writ of mandamus. To the contrary, it is not clear what relief he seeks against Presidents Trump and Obama and, to the extent the Court can discern his allegations, which concern the use of satellites against him, they appear to be fanciful and delusional such that they lack any basis in fact.

In sum, there is no basis for granting Luevano's Petition for a Writ of Mandamus, so the Court will dismiss it as frivolous and for lack of jurisdiction.

An appropriate Order follows.

**All Citations**

Slip Copy, 2020 WL 7181058

---

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue Flag – Appeal Notification

Appeal Filed by    ARIEL YIESON v. C. AKWITTI, ET AL,    5th Cir.,
November 6, 2020

2020 WL 6577504
Only the Westlaw citation is currently available.
United States District Court,
W.D. Texas, Waco Division.

Ariel YIESON #1450737
v.
Warden AKWITTI, et al.

W-20-CA-823-ADA
|
Signed 10/30/2020

**Attorneys and Law Firms**

Ariel Yieson, Gatesville, TX, pro se.

**ORDER**

ALAN D ALBRIGHT, UNITED STATES DISTRICT
JUDGE

 *1  Before the Court are Plaintiff's amended complaint
(#5), more definite statement (#15), and "Emergency Motion
for Appointment (Enforcement) of Counsel, Etc." (#13).
Plaintiff, proceeding pro se, has been granted leave to proceed
in forma pauperis.

**STATEMENT OF THE CASE**

At the time this case was filed, it appeared that Plaintiff,
Ariel Yieson, was seeking financial compensation due to his
infection with Covid-19. The Court noted that the document
filed was not submitted by Yieson, or signed by Yieson, but
was instead submitted and signed by Jaime Luevano and
included Luevano's sick call request as an exhibit. The Court
ordered Yieson to file his complaint on the proper forms and
submit the proper application to proceed in forma pauperis.
The Court also warned Jaime Luevano that he could file
his own complaint and in forma pauperis application, if he
wished, but that Luevano's complaint was subject to dismissal
pursuant to the three-dismissal rule of  28 U.S.C. § 1915(g).

Yieson filed an amended complaint and in forma pauperis
application on September 25, 2020. The filing had Luevano's
return address, but was purportedly signed by Yieson. The
in forma pauperis application was incomplete and the Court
ordered a properly completed form, along with a more definite
statement, to be filed by October 28, 2020. On October 22,
2020, a completed in forma pauperis application was filed,
along with a more definite statement and the "Emergency
Motion for Appointment (Enforcement) of Counsel, Etc."

The entirety of the complaint includes multiple references
to issues that Jaime Luevano is facing and contends that
Luevano is a witness to other issues. The complaint and more
definite statement also imply that, although Yieson has not
necessarily exhausted the grievance process regarding these
issues, Luevano has. Virtually all of the attachments to the
complaint, more definite statement, and motion for counsel
consist of the grievances and inmate request forms of Jaime
Luevano and Jaime Luevano is also the return addressee of the
filings. The few attachments that are purportedly from Yieson
are all missing Yieson's signature, but instead include "n/a"
on the signature line.

Luevano has a long history of filing frivolous and abusive
litigation. *See e.g. Luevano v. United States President of
America*, No. 08-CV-0053 (D.D.C. Jan. 2, 2008) (dismissed
for failure to state a claim); *Luevano v. Board of Disciplinary
Appeals*, No. 5:08-CV-0107 (W.D. Tex. Mar. 20, 2008)
(dismissed as frivolous); *Luevano v. Doe*, No. 1:07-CV-1025
(W.D. Tex. Jan. 18, 2008) (dismissed as frivolous); *Luevano
v. Perry*, No. 1:07-CV-1026 (W.D. Tex. Jan. 18, 2008)
(dismissed as frivolous); *Luevano v. Clinton*, No. 2:08-
CV-1360 (E.D.N.Y. Apr. 4, 2008) (dismissed as frivolous);
*Luevano v. Richardson*, No. 1:08-CV-781 (D.N.M. Oct. 1,
2008) (dismissed for failure to state a claim); and *Luevano
v. Boykin*, No. 5:08-CV-1844 (N.D. Ohio Oct. 31, 2008)
(dismissed for failure to state a claim). In fact, Luevano has
been sanctioned and barred from filing any documents in the
Western District of Texas. *Luevano v. Officer of Inspector
General*, No. SA-11-CA-131-OG (W.D. Tex.), (sanctioned
Petitioner $100 and barred him from filing any document in
the Western District of Texas until he has paid the sanction in
full); *Luevano v. U.S. District Judge of Abilene, TX*,
No. W-12-CA-049 (W.D. Tex.), (sanctioned Petitioner an
additional $100 and barred him from filing documents in the
Western District of Texas until he has paid the sanction in
full). The docket records for those proceedings do not indicate
Luevano has satisfied his sanctions. The filings in this case all

appear to be a thinly disguised attempt by Luevano at filing a case through Yieson. This is improper and a violation of Luevano's sanctions. Accordingly, to the extent Luevano is pursuing any claims in this case, and using Yieson as a means to circumvent the Court's bar orders, his claims are dismissed and he is not authorized to file such an action.

**\*2**  To the extent Yieson has made any of his own claims, he appears to complain that the prison is not providing adequate razors for inmates to shave. Yieson also appears to claim that he has not been provided access to his own medical records, though he only claims that Luevano has filed a grievance against Defendant Pollard-Fortson for this issue, not Yieson. Yieson also appears to make a claim that it is "easy to get infected" with Covid-19 due to unsanitary conditions. Specifically, Yieson appears to claim that the floors and showers are not cleaned "in the right way" and that dust mites, which he asserts are carrying the virus, are in the vents. Yieson may also be claiming that he has been diagnosed with Covid-19 and has not received adequate medical treatment, but it is wholly unclear. Finally, Yieson also appears to allege that another inmate, neither himself nor Luevano, has received insufficient medical care following a seizure.

## DISCUSSION AND ANALYSIS

A. Standard Under  28 U.S.C. § 1915(e)

An in forma pauperis proceeding may be dismissed sua sponte under  28 U.S.C. § 1915(e) if the court determines the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief against a defendant who is immune from suit. A dismissal for frivolousness or maliciousness may occur at any time, before or after service of process and before or after the defendant's answer.  *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

When reviewing a plaintiff's complaint, the court must construe plaintiff's allegations as liberally as possible.  *Haines v. Kerner*, 404 U.S. 519 (1972). However, the petitioner's pro se status does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets."  *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

B. Eleventh Amendment Immunity

Being sued in their official capacities for monetary damages, Defendants are immune from suit under the Eleventh Amendment because such an action is the same as a suit against the sovereign.  *Pennhurst State School Hosp. v. Halderman*, 465 U.S. 89 (1984). The Eleventh Amendment generally divests federal courts of jurisdiction to entertain suits directed against states.  *Port Auth. Trans-Hudson v. Feeney*, 495 U.S. 299, 304 (1990). The Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such an indirect pleading remains in essence a claim upon the state treasury.  *Green v. State Bar of Texas*, 27 F.3d 1083,1087 (5th Cir. 1994).

C. No Personal Involvement

Plaintiff fails to allege any personal involvement by Defendants. To the extent Plaintiff is asserting Defendants are liable due to their supervisory positions those claims are dismissed. Supervisory officials cannot be held vicariously liable in § 1983 cases solely on the basis of their employer-employee relationship.  *Monell v. Department of Social Services*, 436 U.S. 658, 693 (1978);  *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). If a supervisor is not personally involved in the alleged constitutional deprivation, he may be held liable only if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations.  *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). In order to demonstrate a causal connection, the supervisor would have to "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  *Id.* at 304. Plaintiff identifies no such policies and makes no allegations that Defendants were personally involved in any of the actions he contends violated his rights.

D. No Deliberate Indifference

Construing Yieson's claims as liberally as possible, he appears to claim that Defendants have been deliberately indifferent to his medical needs because they failed to provide him with medical records and failed to provide adequate treatment for an apparent diagnosis of Covid-19 infection.

**\*3** As the United States Fifth Circuit Court of Appeals has observed, " '[I]t is fundamental to our federal jurisprudence that state law tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal right.' " *Price v. Roark*, 256 F.3d 364, 370 (5th Cir. 2001) (quoting *Nesmith v. Taylor*, 715 F.2d 194, 196 (5th Cir. 1983)). The Eighth Amendment prohibits cruel and unusual punishment. Prison officials must provide humane conditions of confinement, ensure that inmates receive adequate food, clothing, shelter, and medical care, and take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8–10 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Such a violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer*, 511 U.S. at 834. "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Claims of inadvertent failure to provide medical care or negligent diagnosis are insufficient to state a claim of inadequate medical care. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Similarly, unsuccessful medical treatment or disagreement between an inmate and his doctor concerning the manner of treatment does not give rise to a cause of action. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). In short, a claim of medical malpractice does not amount to a constitutional violation merely because the plaintiff is a prisoner. *Id.* at 106.

Plaintiff admits he received treatment from the prison medical staff. While Plaintiff was understandably upset that his treatment has not been wholly successful and that he has been inconvenienced by the lack of medical records, there is no indication whatsoever in the pleadings that any of these Defendants were aware of and disregarded a significant risk to Plaintiff's health. At most, Plaintiff's claims amount to either a complaint of negligence, unsuccessful medical treatment, or medical malpractice. These are not constitutional violations.

Furthermore, Plaintiff fails to show that his conditions of confinement are cruel and unusual. Plaintiff admits that razors are not provided for Plaintiff and other prisoners due to concerns that prisoners will use them as weapons or to attempt suicide. Plaintiff discounts these concerns saying there are other ways inmates can injure themselves and others. Relatedly, Plaintiff makes conclusory statements that it is "easy to get infected" with Covid-19 due to unsanitary conditions and that the floors and showers are not cleaned "in the right way." Plaintiff also makes the conclusory statement that dust mites, which he asserts are carrying the virus, are in the vents. There is simply no sufficient factual basis provided by Plaintiff regarding these claims or the involvement of Defendants in any of the claims. Plaintiff fails to show any acts by Defendants that constitute cruel and unusual punishment. Plaintiff's allegations are purely speculative and fail to show that prison officials had actual knowledge of any risk and disregarded it. Finally, to the extent Plaintiff is complaining about the resolution of his (and Luevano's) grievances, Plaintiff does not have a constitutional right to have his grievances resolved to his liking. *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005).

### E. Habeas Claims

To the extent Yieson seeks injunctive relief, including transfer to a different facility, he must seek such relief in an application for habeas corpus relief, after exhausting his administrative remedies. The exclusive remedy for a prisoner who challenges the fact and duration of his confinement and seeks immediate or speedier release is habeas corpus relief. *Preiser v. Rodriguez*, 411 U.S. 475, 488-490 (1973). The Court declines to construe this action as a request for habeas corpus relief. Construing Yieson's action here as a request for habeas corpus relief would make him subject to the restrictions on "second or successive" motions. *See e.g. Castro v. United States*, 540 U.S. 375 (2003).

### CONCLUSION

**\*4** The Court believes that this suit is almost entirely an attempt by Luevano to circumvent the Court's bar orders. To the extent he is doing so, Luevano is cautioned that such actions are unacceptable. To the extent that Yieson has made any claims of his own, he has failed to adequately plead any violation of his constitutional rights.

It is therefore **ORDERED** that Yieson's complaint is dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e).

It is further **ORDERED** that all other pending motions are **DISMISSED**.

It is further **ORDERED** that Yieson is warned that if Yieson files more than three actions or appeals while he is a prisoner which are dismissed as frivolous or malicious or for failure to state a claim on which relief may be granted, then he will be prohibited from bringing any other actions in forma pauperis unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

It is finally **ORDERED** that the Clerk shall e-mail a copy of this order and the final judgment to the keeper of the three-strikes list.

**All Citations**

Slip Copy, 2020 WL 6577504

---

**End of Document**    © 2021 Thomson Reuters. No claim to original U.S. Government Works.